WILLIAM HANCE and PETER RICE, executors of ROBERT
P. RAMSEY, deceased, appellants,

*v.*

MARY FROME, respondent.

*Mr. Alfred Mills,* for appellants.

*Mr. C. H. Valentine,* for respondent.

On appeal from a decree of the chancellor, whose opinion, de-
livered at the October term, 1883, is as follows:.

The complainant is the wife of Samuel Frome and the daughter
of Robert P. Ramsey, deceased, who died August·5th, 1880. She·
brings this suit against her father's executors to recover money
which she alleges is due her from his estate for trust funds belong-
ing to her received by him, as her trustee, on certain promissory
notes and a certain judgment, and to obtain from the executors
the transfer to her, or to another trustee for her. benefit of the·
trust property (other than that money) held by him for her, as
she claims, which property consists of the judgment just men-
tioned—a wood-lot of twenty-seven acres and a bond and mortgage
for $3,000 and interest. The bill states that Ramsey advanced
to the complainant in the Spring of 1876 $2,000, which, with his·
approval, she lent to her husband, taking his note therefor, dated
April 1st in that year ; that afterwards he gave her $250 in cash,
which, also, with his approval, she lent to her husband, but took
no note therefor ; that at the time of making these loans to her
husband he was in a public office in his county (Warren), owned
valuable real property there, consisting of two farms, a heavily-
timbered wood-lot of twenty-seven acres, and a house and lot of
five acres, and was supposed by her and her father to be in easy
and prosperous circumstances; that in the Spring and Summer of

1878 there was an official investigation of the financial affairs of the county, in which her husband was implicated, and which resulted in his being indicted with others for conspiracy in the fall of that year, but he was, on trial, acquitted; that her father, who was then advanced in years, was, in view of the difficulties in which her husband was involved, anxious that the latter should secure to her the money he owed her for the before-mentioned loans, and requested her to allow him to arrange the matter for her as her trustee, promising that if she would do so he would get her claim secured and hold the securities until collected, and pay over the money as he might collect it upon them; that she consented, and accordingly gave him the above-mentioned notes which her husband had given her; that he demanded payment from her husband, but the latter alleged that he was at that time unable to discharge the indebtedness, and gave to her father, as her trustee, his note, dated November 1st, 1878, for $2,586.66 for principal and interest, payable to Robert P. Ramsey, trustee, on which Mr. Ramsey subsequently recovered judgment against her husband in the Warren circuit court and issued execution thereon, under which a levy was made, and that the judgment still remains wholly unpaid and unsatisfied; that before the giving of the last-mentioned note, and on the 24th of October, 1878, her husband conveyed to her father, without consideration, as trustee for her, and in trust to sell and convey the property for the best price he could get for it, and pay the money over to her on account of her debt, the wood-lot and the house and lot; that in March, 1879, her father sold the house and lot for $250, and that he paid that money over to her in accordance with his trust; that on the same 24th of October, 1878, her husband gave her father a mortgage on one of his two farms for $3,000 and interest, to be held by him as security for her debt, and that after the judgment was recovered by her father on the trustee note, he obtained from her husband, on the 17th of December, 1878, the assignment of a judgment recovered by John C. Danley, a debtor of the latter, against the trustees of a school district in Warren county, for $1,153.40; the money which might be collected from the last-mentioned judgment to be applied to the payment of the

judgment recovered by her father, as her trustee, against her husband; and that at the same time her husband transferred to her father certain promissory notes given to the former: one by Josiah Ketcham for $157.50, one by William Ketcham for $100, one by Henry Winter for $300, one by Thomas P. Frome for $100, and one by James F. Boyd for $103—the moneys which might be collected from which were to be credited on the last-mentioned judgment. The bill states that Mr. Ramsey collected all the notes and retained the proceeds in his own hands, and never paid any of them over to her, and that he never accounted to her therefor, and never paid over or accounted to her for any money he received on the school district judgment; that he made his will, dated November 27th, 1878, in which he mentions the advance of $2,000, and that on the 8th of September, 1880, she gave the executors a written notice forbidding them to appraise the $3,000 mortgage or the school district judgment as a part of his estate, and demanding from them a conveyance of the wood-lot to her. The bill prays a decree that Mr. Ramsey, at his death, was indebted to her, as her trustee, to the amount of the five promissory notes; that he held the $3,000 mortgage and the school district judgment merely as collateral to the judgment recovered by him as her trustee; that the executors are indebted to her in the full amount collected on the school district judgment, and that they pay over to her out of his estate all the moneys collected for her by Mr. Ramsey under the trust, and that they assign the $3,000 mortgage to her and execute a conveyance to her of the wood-lot, or that a new trustee may be appointed to whom the assignment and conveyance shall be made for her use. There is also the general prayer for relief.

The executors are the only defendants. By their answer they admit the advance of $2,000; the lending of that money to her husband and taking the note therefor; the giving by Mr. Ramsey to the complainant of the $250, and that she lent that also to her husband, but they deny that either loan was with the consent or approval of Mr. Ramsey. They admit the making of the conveyance of the wood-lot and house-lot to Mr. Ramsey, but deny the alleged trust, and aver that the conveyance was given on the

purchase of the property by him on his own account. They also deny the alleged trust in reference to the $3,000 mortgage; the school district judgment and the notes, and claim that the mortgage was given and the judgment assigned to Mr. Ramsey on his own account for debt due him from the complainant's husband; and they allege that he never collected the moneys due on the notes, and deny that he ever collected anything on the trustee judgment, or ever recognized it as valid, or ever ratified the obtaining of it, and they aver that it was obtained without his knowledge, privity or consent. They admit that Mr. Ramsey, after the sale of the house and lot, paid over the purchase-money to the complainant, but they deny that he ever accepted any trust in reference to any of the property in question, and allege that the complainant never claimed in his lifetime that he was her trustee, or called on him to account in respect to the property which she now claims he held in trust for her.

Samuel Frome, the complainant's husband, testifies that Mr. Ramsey urged him in the spring of 1878, to secure to the complainant the money that was due to her from him. The reason for it was, that he thought that all who had been concerned in the county matters before referred to (among whom was Frome) would have to go to the state prison. He says that Mr. Ramsey told the complainant that he thought it best that he, Ramsey, should act as her trustee; that he knew more about such matters than she did. He added that she yielded to his request and gave the $2,000 note up to him accordingly.

It appears, from his testimony, that Mr. Ramsey urged him to secure the payment of his indebtedness to his wife by the transfer of property to him, as her trustee, and that he asked her to leave the management of the matter to him and permit him to act as her trustee, in view of his superior knowledge of business and her inexperience in such affairs. It appears, also, not only by Mr. Frome's testimony, but by that of the attorney by whom the judgment on the trustee note was entered, that Mr. Ramsey was fully acquainted with the fact that the suit was brought on the note, and that it was indeed brought at his request. It further appears, by the testimony of numerous other witnesses,

that Mr. Ramsey acknowledged his trusteeship. Notably, in the spring or winter of 1879 he said to Daniel A. Young that he had given the complainant $2,000, which her husband had had the use of, but he thought he had it secured, as the latter had made over to him a judgment against the trustees of the school district, also a wood-lot, and the house and lot and some notes, and if he could collect the judgment her money was safe. The witness says Mr. Ramsey frequently spoke to him about the matter. To Robert L. Garrison he said he held the school district judgment in trust for the complainant, and that if Garrison would advance the money to her for it he would assign the judgment over to him. He also said that he had a $3,000 mortgage that he held for her, and that he would assign that to Garrison if he would furnish the money. Moreover, it is admitted and it is proved otherwise, also, that he paid over to the complainant the proceeds of the sale of the house and lot as he received them. There is, therefore, no room to doubt that he was her trustee in regard to property placed in his hands for her benefit by her husband to secure to her the payment of his indebtedness to her for borrowed money.

As to the property which he so received and held in trust, the complainant's husband testifies that it was the school district judgment, the $3,000 bond and mortgage, the wood-lot and house and lot, and the notes mentioned in the bill.

The proof that he held the school district judgment in trust for her is plenary. To Garrison he said he held it in trust for the complainant—that he held it for her benefit. To John C. Danley, the plaintiff in the judgment, he said he held it for her —for her benefit. To William Martenis, one of the trustees of the school district, he said the same thing. To William B. Cramer, that he had taken it from her husband to secure her money. To Isaac S. Dill, to whom he tried to sell it, he said that he wanted the money for her benefit—that it belonged to her. To John Gardner he said he had papers in his hands to satisfy her claim if the district judgment was good, and to Daniel A. Young, as before stated, he said that her husband had made that judgment over to him, and also a wood-lot and the

house and lot, and the $3,000 mortgage, and some notes, and that if he could collect the judgment her money was safe. This testimony of Mr. Ramsey's voluntary statements to various witnesses at different times abundantly corroborates Frome's testimony, and supports the allegation of the bill in regard to the judgment. It is urged, on behalf of the defendants, that it appears from Frome's testimony, and also from Garrison's, that Mr. Ramsey was desirous of raising the money on the judgment in order to lend it to the complainant; but the proof is that he said that he had expected, or had promised, to raise the money for her (she wanted to use it, to save one of the farms which had been sold under foreclosure and bought in for her), but was not able to do so, because he had invested his money in some land, but at the same time he said to Garrison that he held the judgment in trust for her, and, as before stated, he said substantially the same thing to others.

The testimony of Young, twice above quoted, is also corroborative of that of Mr. Frome as to the $3,000 mortgage. So, also, is that of Garrison, who says that Ramsey told him he held that mortgage for the complainant. It is urged, on the part of the defendants, that Frome testifies that the understanding was, that Ramsey was to assign the mortgage to the complainant after the prior mortgage on the mortgaged premises had been paid off out of the money realized for her from the other securities; or, as he otherwise states it, that Ramsey was to hold that mortgage and buy the property, and give her a deed for it, so that she should own the mortgaged premises. But this testimony obviously does not impugn Frome's statement that the mortgage was given in trust for her. It is also argued that inasmuch as Ramsey, at or about the time the mortgage was given, held Frome's note for $3,000, it is quite probable that the mortgage was given for the note. But Frome swears positively that that note was satisfied otherwise, and was given up to him, and he swears explicitly that the mortgage was not given for the note, or the debt it represented, and that he owed Ramsey nothing when the mortgage was given. It may be added that it does not appear that Ramsey, at his death, held any note against Frome, nor that he had any book-account against him. Two witnesses, as before stated,

Young and Garrison, testify that Ramsey said the mortgage be-- longed to the complainant. Why, if it was his own, should he have said it was hers to either of them?

As to the notes, the evidence is not such as to satisfy me that Ramsey's estate should be charged with anything on account of them. Frome's testimony as to them not only is not in any way corroborated, but is in itself unsatisfactory.

The William Ketcham note he appears to have transferred to Ramsey, not on his wife's, but his own account, and he received the money for it. The Winter note, he says, was paid by him to Ramsey, and so, too, of the Thomas P. Frome note, but his testimony as to payment is not satisfactory, and it is a noticeable fact that he never endorsed the Frome note, which was payable to his order. The Boyd note he says he gave to Ramsey in order that he might get it discounted and use the money, which, he says, he owed to Ramsey. The Josiah Ketcham note of $157.50 was collected by Mr. Ramsey, but I am not willing, from the proof on the subject of the notes, to make any decree against Ramsey's estate in regard to that note. It is true Young says Ramsey told him he had notes among the other securities Frome had given him for the complainant's debt, but he does not say that Ramsey specified any note.

The wood-lot was evidently taken and held by Ramsey in trust for the complainant. According to the evidence, it was by his procurement that the conveyance was made to him. Having thus obtained the title to the property, it would be a fraud in him to deny the trust and seek to apply the property to his own use, and he could not, under such circumstances, be permitted to avail himself of the statute of frauds to effectuate such fraudulent design. Frome swears the lot was conveyed to Ramsey without consideration, and merely as security for the complainant's debt. Young says Ramsey told him he held it in trust for her. It does not appear that Ramsey paid any consideration for the conveyance. Both properties—the wood-lot and the house and lot —were included in the same deed, and it was given on the same date as the bond and mortgage. Ramsey sold the house and lot and paid the purchase-money over, as he received it, to the com-

plainant.   On the evidence, it seems clear that he merely held
the property in question in trust for her.   But the title is not in
the executors.   Though by his will he directed them to divide
the residue of his property among his three daughters and a
grandson, son of a deceased daughter, and, from this provision,
title in them may be implied, that property is not included in the
provision, it constitutes no part of the residue to be divided.
No decree, therefore, can be made against the executors in regard
to it.   And here reference may be made to a paper put in evi-
dence by the defendants and proved to be a statement made by
Ramsey, before his death, substantially claiming the judgment as
his own property.   It is almost too obvious for remark that that
paper is not competent evidence for the defendants.   The com-
plainant was not present when it was made, nor was her husband.
The paper was written by a friend of Ramsey's who was called
in for the purpose, and who wrote it at the dictation of the latter.
The complainant's claim cannot. be affected by it.   And so, too,
as to the endorsement made by Ramsey on the bond which the
$3,000 mortgage was made to secure.   It is a mere declaration
or statement of Ramsey's by which the complainant is not bound,
and which is not competent evidence against her.

There will be a decree that the defendants account for and pay
over to the complainant the money collected by Ramsey and them
upon the school district judgment, without interest thereon.   It
appears that Ramsey received only $67.05, and that was received
on account of interest and was received in May, 1880, a few
months before he died.   Since his death the defendants have
received $869.38 on account of the judgment.   It will also be
decreed that the defendants assign that judgment and the bond
and mortgage (it appears that the mortgaged premises have been
sold under foreclosure of the prior mortgage) and the trustee
judgment to the complainant, the assignment of the school dis-
trict judgment and the bond and mortgage to contain a statement
of the fact that they are to be held by her as collateral security
for the payment of the amount remaining due on the trustee
judgment; or, if she prefers it, the assignment may be made to a

new trustee to be appointed by this court. Under the circumstances, no costs will be awarded to the complainant.

PER CURIAM.

This decree unanimously affirmed for the reasons given by the chancellor in the foregoing opinion.